IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WALTER WYRICK, JR., derivatively on behalf of NUTRISYSTEM, INC.<br>　　　　Plaintiff, | :<br>:<br>: |
| v. | : Civ. No. 11-5036 |
| JOSEPH REDLING et al.,<br>　　　　Defendants, | :<br>:<br>: |
| and | : |
| NUTRISYSTEM, INC.,<br>　　　　Nominal Defendant. | :<br>:<br>: |

**FINAL ORDER & JUDGMENT**

Plaintiff in this derivative action bases his Complaint on allegedly excessive compensation awarded to Nutrisystem executives. The Parties now seek final approval of their settlement. *(Doc. No. 35.)* Because I find the proposed settlement to be fair, adequate, and reasonable, I will grant final approval.

**I.    Background**

Nutrisystem provides its customers with weight a management program comprised of prepared, low-calorie meals. The instant action and related state action are founded upon, <u>inter alia</u>, allegations that Nutrisystem's Board improperly authorized 2010 pay increases for Nutrisystem's Chief Executive Officer and Chief Financial Officer, despite a publicly stated "pay for performance" executive compensation policy. Although Nutrisystem continues to deny any wrongdoing, the Parties reached a settlement agreement on May 16, 2012, during a settlement conference conducted by me.

As part of the proposed settlement, the Nutrisystem Board has adopted or will adopt the following corporate governance measures, which will remain in effect for the next five years:

> (a) Nutrisystem will aspire to limit guaranteed bonus commitments for Nutrisystem's executive officers to one year.
> (b) Upon termination of an executive officer's employment with Nutrisystem, Nutrisystem shall limit the post-termination exercise period of stock options held by that executive officer to one year following such executive officer's date of termination from Nutrisystem.
> (c) [ . . .] Nutrisystem's executive officers shall not receive, and shall not be entitled to, a general release of claims from the Company upon termination;
> (d) Nutrisystem will exercise commercially reasonable efforts to describe its executive compensation policies clearly and comprehensively in accordance with the SEC's rules and regulations in all annual stockholder meeting proxy statements;
> (e) Until at least its 2017 annual stockholder meeting, Nutrisystem shall hold a say-on-pay vote on an annual basis, which vote shall be considered by the Compensation Committee and the Board when determining executive compensation at Nutrisystem;
> (f) In the event of any future negative say-on-pay vote, Nutrisystem shall discuss its response to such vote in its proxy statement for the annual stockholder meeting in the following year in accordance with the SEC's rules and regulations;
> (g) Nutrisystem shall include a full disclosure in its annual stockholder meeting proxy statement in accordance with the SEC's rules and regulations of any compensation peer group used by the Board or Compensation Committee in setting executive officer compensation;
> (h) Nutrisystem shall retain an independent compensation consultant to provide advice, and perform analyses in connection with such advice, concerning Nutrisystem's executive compensation policies. The Compensation Committee shall evaluate annually such independent compensation consultant's performance. [ . . . ]
> (i) Maintenance of stock ownership guidelines applicable to the Board and the Company's executive officers; and

    (j) The Compensation Committee shall consist entirely of independent directors, consistent with the rules of the primary stock exchange or market on which Nutrisystem's common stock is traded.

*(Doc. No. 31-1, at 13-15.)*

  I preliminarily approved the settlement and ordered the Parties to disseminate appropriate notice. *(Doc. No. 32.)* Having done so, the Parties submitted extensive briefing on the fairness of the proposed settlement. At a fairness hearing held on November 15, 2012, counsel carefully explained both the terms of the settlement and why it is fair and reasonable. After the hearing, at my request, Plaintiffs' counsel provided to me additional information respecting requested attorneys' fees.

**II.** **Legal Standards**

  Settlement in a derivative action requires Court approval. Fed. R. Civ. P. 23.1. This Court must consider the following factors to determine whether a proposed settlement is fair and reasonable: 1) the complexity, expense, and likely duration of the litigation; 2) the reaction of absent beneficiaries to the settlement; 3) the stage of the proceedings and the amount of discovery completed; 4) the risks of establishing liability; 5) the risks of establishing damages; 6) the risks of maintaining the action through trial; 7) the ability of the defendants to withstand a greater judgment; 8) the reasonableness of the settlement in light of the best possible recovery; and 9) the reasonableness of the settlement compared to a possible recovery considering all the risks of litigation. Girsh v. Jepson, 521 F.2d 153, 156 (3d Cir. 1975); see also Shlensky v. Dorsey, 574 F.2d 131, 147-49 (3d Cir. 1978) (applying factors to derivative actions). "The principal factor is the extent of the benefit to be derived from the proposed settlement by the corporation,

the real party in interest." Bell Atl. Corp. v. Bolger, 2 F.3d 1304, 1311 (3d Cir. 1993) (quoting Shlensky, 574 F.2d at 147).

The Court must also approve any award of counsel fees. Shlensky, 574 F.2d at 149. In evaluating the proposed fee award, I must determine whether the settlement confers a substantial benefit on Nutrisystem. If it does not, Plaintiffs' counsel may not receive any fee. Id. If it does, I must determine whether the proposed fee award is reasonable by looking to the guidelines established in the Lindy cases. Shlensky, 574 F.2d at 150 (citing Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp., 487 F.2d 161 (3d Cir. 1973) (Lindy I), and Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp., 540 F.2d 102 (3d Cir. 1976) (Lindy II)).

The Lindy cases require me to use the lodestar method to calculate counsel fees here. Lindy I, 487 F.2d at 168. The lodestar method is appropriate where, as here, the settlement involves more than a pure damages award and thus "evades the precise evaluation needed for the percentage-of-recovery method." In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig., 55 F.3d 768, 821 (3d Cir. 1995). I initially determine the "lodestar"—the objective value of the individual attorneys' efforts—by multiplying hours worked by normal hourly rates. Lindy I, 487 F.2d at 168. What constitutes a "normal" hourly rate is determined by the market rates for lawyers of reasonably comparable skill, experience, and reputation in the relevant community. Reibstein v. Rite Aid Corp., 761 F. Supp. 2d 241, 259 (E.D. Pa. 2011). I may then adjust that figure based on several factors, including the contingent nature of success in the litigation and the quality of the attorneys' efforts. Lindy I, 487 F.2d at 168.

Finally, I must determine whether to approve any proposed incentive awards. The

Parties here propose to deduct from counsel fees incentive awards of $5,000 to each Plaintiff.  Because the incentive payment is "to come from the attorneys' fees awarded to plaintiff's counsel," it "need not be subject to intensive scrutiny, as the interests of the corporation, the public, and the defendants are not directly affected."  In re Cendant Corp., Derivative Action Litig., 232 F. Supp. 2d 327, 344 (D.N.J. 2002).

### III.  Discussion

**Reasonableness of the Settlement**

I will analyze the proposed settlement under each of the Girsh factors.  Girsh, 521 F.2d at 156.

Complexity, Expense, and Likely Duration of Litigation

Defendants' Motion to Dismiss was pending at the time the Parties reached a settlement.  Had Plaintiff survived that motion, the expense of litigating this action through summary judgment or trial would have been considerable.  The law respecting the merits and damages is complex and would have necessitated extensive discovery, expert testimony, and considerable motions practice. Settlement "not only avoids the substantial risks and uncertainties inherent in further litigation, it also obviates the need for expensive and protracted litigation."  Lazy Oil Corp. v. Witco Corp., 95 F.Supp.2d 290, 297 (W.D. Pa. 1997).

Reaction of Nutrisystem Stockholders

The Parties widely disseminated notice of the proposed settlement.  None of Nutrisystem's thousands of shareholders—holding some 27 million shares—has objected.  Although not dispositive, the absence of objectors generally suggests that a

proposed settlement is fair and reasonable. Perry v. FleetBoston Fin. Corp., 229 F.R.D. 105, 115 (E.D. Pa. 2005).

Stage of Proceedings & Amount of Discovery Completed

Plaintiffs' counsel conducted an extensive factual and legal investigation into the alleged wrongdoing, and were thus able to assess the potential risks and rewards of litigation. *(Doc. No. 35, at 28.)* The Parties agreed to settle at an optimal point: early enough to achieve substantial savings in litigation costs, but not so early to conclude the settlement in ignorance of the claims' potential merits.

The Risks of Proceeding to Trial

Under this (combined) factor, I must decide whether any "discount" Plaintiff agreed to accept in settlement is warranted by the risk of losing at trial. Here, assuming Plaintiff survived the threat of dismissal, the business judgment rule would have presented a significant obstacle to establishing liability. Plaintiff's claims arose entirely from Board decisions as to executive compensation. Such decisions are generally afforded great deference. See In re Walt Disney Co. Deriv. Litig., 907 A.2d 693 (Del. Ch. 2005), aff'd, 906 A.2d 27 (Del. 2006).

Plaintiff would also have had difficulty proving damages. Not only would the fight over damages have been protracted and expensive, it was a fight Plaintiff may have lost. Moreover, as I discuss below, the proposed settlement provides long-term protections regarding the awarding of compensation to Nutrisystem executives. Thus, even if damages were recoverable (which is not clear), the proposed protections are at least as valuable to the corporation.

Ability of Defendant to Withstand a Greater Judgment

The non-monetary concessions Plaintiff won in this settlement are substantial, and it is unlikely that such relief (or its monetary equivalent) would have been achieved through further litigation.  Although Defendants may have been capable of withstanding a damages award, this factor alone is not sufficient to render the proposed settlement unfair or unreasonable.  Ehrheart v. Verizon Wireless, 609 F.3d 590, 605 (3d Cir. 2010) ("The factors considered in determining whether a settlement is fair, reasonable, and adequate are just a guide; an unfavorable conclusion regarding one or more factors does not automatically render the settlement unfair." (internal quotations omitted)); see also First State Orthopaedics v. Concentra, Inc., 534 F. Supp. 2d 500, 522 (E.D. Pa. 2007) (approving settlement when "eight of the nine factors weigh in favor of settlement").

Conclusion

Having considered the Girsh factors and all other relevant issues, I conclude that the terms of the settlement are fair, reasonable, and appropriate.

**Reasonableness of the Fee Award**

The proposed settlement guarantees significant, long-term changes to the Board's decisions regarding executive compensation.  It restricts the Board's ability to incur long-term liabilities on behalf of the corporation by limiting guaranteed bonus commitments to one year, and provides for independent oversight of executive compensation decisions. These provisions confer substantial benefits on Nutrisystem.  See Mills v. Elec. Auto-Lite Co., 396 U.S. 375, 395 (1970) ("[A] corporation may receive a 'substantial benefit' from a derivative suit, justifying an award of counsel fees, regardless of whether the benefit is pecuniary in nature."); see also In re Schering-Plough Corp. S'holders Derivative Litig.,

Civ. No. 01-1412, 2008 WL 185809 at *4 (D.N.J. Jan. 14, 2008) ("[C]orporate governance changes are substantial non-pecuniary benefits [that] justify an award of counsel fees under the substantial benefit doctrine.")  Accordingly, Plaintiffs' counsel is entitled to a reasonable fee award.  See Shlensky, 574 F.2d at 149.

In evaluating the proposed fee award of $765,000, I will first determine the lodestar.  Lindy I, 487 F.2d at 168.  As demonstrated below, Plaintiffs' counsel expended approximately 1,076 hours prosecuting this litigation.  To calculate the lodestar, I have used hourly rates that range from $250 to $795.  These rates are reasonable when compared to "market rates in the relevant community for lawyers of reasonably comparable skill, experience, and reputation."  Reibstein, 761 F. Supp. 2d at 259.  Plaintiffs in the state and federal lawsuits were represented by the New York firm of Levi Korsinsky, LLP, and The Weiser Law Firm, P.C. from Berwyn, Pennsylvania.  The Parties submitted studies showing that in 2008, hourly rates for partners at large New York firms averaged $747; associates averaged $456.  *(Letter from Eduard Korsinsky of Levi Korsinsky, LLP (citing National Law Journal, 2008 Survey)).*  In Philadelphia, hourly rates average $650 for partners and $400 for associates.  *(Letter from Robert B. Wieser of The Weiser Law Firm, P.C.)*  The Parties submitted résumés for each attorney who worked on these matters.  These are reputable firms with significant experience and expertise in securities litigation and derivative actions.  I conclude that these hourly rates are reasonable and lead to a lodestar calculation of $525,098.75.

| **Name** | **Title** | **Hours** | **Rate** | **Lodestar** |
|---|---|---|---|---|
| Robert B. Weiser | Partner | 102.5 | $625 | $64,062.50 |
| Brett D. Stecker | Associate | 153.5 | $375 | $57,562.50 |

| Jeffrey J. Ciarlanto | Associate | 132 | $250 | $33,000.00 |
| --- | --- | --- | --- | --- |
| Joseph M. Profy | Associate | 145.5 | $400 | $58,200.00 |
| Edward Korsinsky | Partner | 82.5 | $795 | $65,587.50 |
| Joseph E. Levi | Partner | 12.25 | $795 | $9,738.75 |
| Michael Rosner | Of Counsel | 135.5 | $675 | $91,462.50 |
| W. Scott Holleman | Associate | 268 | $495 | $132,660.00 |
| Daniel H. Adler | Associate | 25.5 | $295 | $7,522.50 |
| Cecille Cargill | Associate | 2 | $425 | $850.00 |
| Matthew R. Birnbaum | Associate | 0.25 | $320 | $80.00 |
| Rena B. Katz | Paralegal | 9.75 | $265 | $2,583.75 |
| Adam Rosen | Paralegal | 3.25 | $265 | $861.25 |
| Joanna Chlebus | Paralegal | 3 | $265 | $795.00 |
| Matthew Savarese | Paralegal | 0.5 | $265 | $132.50 |
| **TOTAL** | | **1,076** | | **$525,098.75** |

With this lodestar, Plaintiffs' counsel would receive a multiplier of approximately 1.46. ($525,098.75 x 1.46 = ~$765,000.) This is well within the range of reasonability. See In re Cendant Corp. PRIDES Litig., 243 F.3d 722, 742 (3d Cir. 2001) (acceptable multipliers "range from 1.35 to 2.99"). The risk Plaintiffs' counsel undertook in pursuing this litigation, their considerable investment of resources, and the skill and learning required should be reflected in the multiplier and fee award. A fee award of $765,000 is reasonable and will be approved.

Because the incentive awards called for in the proposed settlement are to be

deducted from the award of attorneys' fees, I need not subject them to "intensive scrutiny." In re Cendant Corp. 232 F.Supp.2d at 344. I will approve the incentive awards to Plaintiffs because they are reasonable and because "the interests of the corporation, the public, and the defendants are not directly affected." Id.; see also In re SmithKline Beckman Corp. Sec. Litig., 751 F.Supp. 525, 535 (E.D. Pa. 1990) (awarding incentive payments of $5,000 from common fund).

**AND NOW**, this 12th day of December, 2012, it is hereby **ORDERED** as follows:

1. Plaintiff's Motion for Final Approval of the Settlement *(Doc. No. 34)* is **GRANTED**;

2. The Settlement as set forth in the Stipulation is fair, reasonable, and adequate and is **FINALLY APPROVED** in all respects, including the Fee Award and Incentive Awards;

3. The Parties shall comply with the terms of the Settlement;

4. I will retain jurisdiction to enforce the terms of the Settlement;

5. This Order and Judgment is a final, appealable judgment and should be entered forthwith by the Clerk in accordance with Rule 58.

6. The Clerk shall mark this case **CLOSED** for statistical purposes.

**AND IT IS SO ORDERED.**

*/s/ Paul S. Diamond*

_____

Paul S. Diamond, J.